UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES K. ENGLISH,

     Plaintiff,

v.                                                              Case No. 3:18cv371-LC-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Charles K. English's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D). Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed and the applications for DIB and SSI denied.

## ISSUE ON REVIEW

Mr. English, who will be referred to as claimant, plaintiff, or by name, claims the ALJ erred by failing to articulate adequate and explicit reasons—supported by substantial evidence—for discrediting Mr. English's complaints of pain.[1]  (Doc. 6).

## PROCEDURAL HISTORY

On March 12, 2015, plaintiff protectively filed applications for DIB and SSI, claiming disability beginning February 20, 2015, due to back and right elbow problems.  T. 68, 80.[2]  The Commissioner denied the applications initially and on reconsideration.  T. 77, 89, 101, 114.  After a hearing on January 12, 2017, the ALJ found claimant not disabled under the Act.  T. 16-26.  The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-3.  The Commissioner's determination is now before the court for review.

---

[1] The court instructed plaintiff that his "memorandum shall, at its outset and before any fact recitation, specifically identify each issue advanced."  (Doc. 5, p. 2).  Nevertheless, plaintiff did not identify the issue until the fourteenth page of his 24-page memorandum.  (Doc. 6, p. 14); *cf.* Fed. R. App. P. 28(a) (providing that an appellate brief shall contain a statement of the issues presented for review before a description of the facts and procedural history).  A very good reason exists for these requirements, in that the reviewing court will read the factual and procedural history in light of the issues actually raised.

[2] The administrative record filed by the Commissioner consists of 6 volumes (docs. 4-2 through 4-7) and has 340 consecutively-numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).  The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[3]

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, he is not disabled.

<u>FINDINGS OF THE ALJ</u>

In his written decision, the ALJ made several findings relative to the issue raised in this appeal:

---

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

• Claimant has the severe impairment of degenerative disc disease.  T. 18.

• Claimant has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  T. 21.

• Claimant has not been under a disability, as defined in the Act, from February 20, 2015, through April 26, 2017.  T. 26.

### FACT BACKGROUND AND MEDICAL HISTORY

At the January 2017 hearing, Mr. English testified about his health, daily activities, and work history.  Born on January 12, 1967, he is 5'11'' and weighs 206 pounds.  T. 46-47, 49.  He graduated from high school.  T. 47.  He lives by himself.  T. 47.  He has a 9-year-old daughter, but she lives with her mother.  T. 47-48.

Plaintiff previously worked as a brick mason and a deckhand on an oil supply barge.  T. 51.  He stopped working in February 2015 due to back pain.  T. 51.  He used to drive, but the State of Florida suspended his license for failing to pay child support.  T. 51-52.  His medications help his pain "somewhat."  T. 51.

He can walk about 75 yards.  T. 59.  In response to the question, "[d]o you ever have days where you're not in pain?" plaintiff stated, "[a] lot of them.  Just not — mainly, running five or six."  T. 57.  He says has at least three "bad days" a week, during which he "sit[s] there and watch[es] TV."  T. 57, 59.  He can bathe, dress,

and groom himself, though "[i]t takes [him] a little longer." T. 52, 55. He walks to the dollar store to buy groceries but walking down the steps from his house aggravates his back pain. T. 53, 57. He can cook and wash clothes. T. 53.

The evidence also includes records from multiple medical clinics. On July 2, 2008, plaintiff presented to Baptist Occupational Health Clinic ("BOHC") with complaints of mid and low back pain. T. 274. He reported lifting a concrete machine off a truck when the machine "apparently went down, kind of jerking his back." T. 274. Examination revealed tenderness "to palpation over the right midthoracic region in the paraspinal musculature" and "to palpation in the lower left paraspinal musculature in the lumbar region." T. 274. He experienced "pain with flexion at about 45 degrees and about 5 degrees of extension, with maybe 15 degrees of left side bend and with left rotation." T. 274. Ramon Ryan, M.D., diagnosed Mr. English with a "midback strain" and "low back strain." T. 274. Dr. Ryan injected claimant with Toradol and prescribed Flexeril, Indocin, and Lortab. T. 274. Dr. Ryan also advised plaintiff to lift no more than 10 pounds, and to avoid repetitive bending, twisting, stooping, and working with his arms outstretched. T. 274.

Mr. English returned to the BOHC on July 9 and reported "his low-back is not much better," but "his mid-back is doing somewhat better, with only a little discomfort[.]" T. 276. He also indicated he could not use his riding lawnmower due to pain. T. 276. Examination showed pain with movement of the lumbar spine. T.

276.  Dr. Ryan continued plaintiff's prescriptions, referred claimant to physical therapy, and maintained the lifting and postural restrictions.  T. 276.

On July 23, 2008, plaintiff continued to complain of low-back pain, but indicated "he is doing a little bit better."  T. 277.  Dr. Ryan discontinued the prescriptions for Flexeril and Indocin, and instead prescribed Zanaflex and piroxicam.  T. 277.  Dr. Ryan also increased claimant's lifting restriction to 15 pounds.  T. 277.

When Mr. English returned to BOHC on August 18, 2008, he stated "he is still about the same.  He says he will [be] okay off and on, but then he will suddenly have significant pain and difficulties."  T. 278.  He also indicated Celebrex "has worked quite a bit better than his previous medication[.]"  T. 278.  Dr. Ryan observed plaintiff "is not particularly tender to palpation, but he does have increased pain with flexion at about 60 degrees."  T. 278.  Dr. Ryan increased the strength of Mr. English's Lortab prescription from 7.5 to 10 milligrams.  T. 278.

Plaintiff reported he was "about the same" on September 4, 2008.  T. 279.  Dr. Ryan noted claimant "does seem to be rather pain focused and there are relatively minimal findings at this time on physical examination."  T. 279.  Dr. Ryan believed "his pathology is muscular," and expressed hope "the physical therapy will make a significant difference."  T. 279.

On September 17, 2008, claimant reported he felt "better overall, but then [went] on to say that he was in so much pain yesterday, that he had to go home" from work. T. 280. Examination revealed Mr. English was "nontender to palpation" but complained "of pain with essentially all [range of motion], except for right rotation." T. 280. X-rays of the lumbrosacral spine showed no fractures, dislocations, or other acute abnormality. T. 280. Dr. Ryan ordered an MRI for further evaluation and continued the prescriptions for Flexeril, Celebrex, and Lortab. T. 280. Dr. Ryan also reduced claimant's lifting restriction to 10 pounds. T. 280.

The MRI of the lumbar spine, taken on September 29, 2008, revealed: (1) "L3-4 degenerative disc disease, with more prominent anterior subligamentous disc bulge and very small posterior disc bulge with anterior high intensity zone consistent with annular tear"; (2) "focal area of T1 hypointensity/T2 hyperintensity anterosuperior aspect of the L4 vertebral body, and although this is likely on a degenerative basis, an intraosseous lesion is not entirely excluded, although felt to be less likely"; (3) "L4-5 degenerative disc disease and facet arthropathy causing no significant central canal stenosis"; and (4) "severe bilateral foraminal stenosis and impingement of the exiting bilateral L4 nerve roots is present." T. 268.

After reviewing the MRI, Dr. Ryan noted the findings "appear to be degenerative in nature" but the annular tear "seems to be somewhat more superior in its location than where he is having his pain." T. 281. Dr. Ryan assessed

"[p]ersisting low back pain with aggravation due to activities above and beyond what he has been recommended to do."  T. 281.  Dr. Ryan continued the prescriptions for Celebrex, Flexeril, and Lortab, as well the lifting and postural restrictions previously imposed.  T. 281-82.

The next medical evidence in the record comes from an October 28, 2014, visit to the Berryhill Medical Clinic.[4]  T. 289.  Plaintiff presented with complaints of testicular pain.  T. 289.  At the time, plaintiff's prescriptions included Norco, Xanax, Zestril, Celebrex, and Clonidine.  T. 289.  Matthew Warner, M.D., noted plaintiff experienced low back pain and the September 2008 MRI showed root impingement.  T. 290.  Dr. Warner's musculoskeletal examination, however, revealed normal function and a neurological examination was "grossly normal."  T. 290.  Subsequent musculoskeletal and neurological examinations on November 26 and December 31 of 2014, and January 29 and February 27 of 2015, yielded the same results.  T. 293, 296, 299, 302.  On February 27, 2015, Dr. Warner noted plaintiff's low back pain was "of moderate severity" and "worse [with] activity."  T. 301.  Dr. Warner continued to treat the pain with prescriptions of Norco and Celebrex.  T. 301-03.

---

[4] The October 28, 2014, treatment note suggests plaintiff had previously visited the clinic because it refers to plaintiff as an "established patient" and indicates the purpose of the visit was to "follow up regarding medication."  T. 289.

Mr. English also sought treatment at the Good Samaritan Health Clinic. On June 24, 2015, plaintiff complained of intermittent low back and sciatic pain. T. 309. He reported work and lifting exacerbated the back pain. T. 309. A physical examination revealed pain with forward flexion but extremities within normal limits. T. 309. Leah Tedder, a physician's assistant, prescribed Naproxen for pain. T. 309.

Claimant returned on October 20, 2015, complaining of back and shoulder pain. T. 310. Dr. Anz discussed an orthopedic referral but stated "will not/cannot give Lortab or repeat MRI." T. 310. During a December 15, 2015, appointment, Dr. Charles Tucker discontinued Naproxen and prescribed ibuprofen. T. 311.

Mr. English then sought treatment at the Santa Rosa Community Clinic on February 4, 2016. T. 319-20. He complained of left lower back pain with rare radiation to the left medial thigh. T. 319. His mother reported "that nothing they were doing for him at Good Samaritan was helping[.]" T. 319. Charlene Echols, an advanced registered nurse practitioner, performed a musculoskeletal examination and noted "back muscles equal, [patient] does not [complain of] pain on palpation, [and] no unusual spasms noted." T. 320. At plaintiff's request, Echols ordered an MRI. T. 319-20.

The February 10, 2016, MRI showed: (1) "no lesions identified within the lumbar region apart from discogenic reaction secondary to severe degenerative disc disease at multiple levels"; (2) "central disc protrusion at L2-3"; (3) "prominent

bulge versus central protrusion [at] L4-5"; (4) "no canal stenosis at any level"; (5) "bilateral foraminal encroachment [at] L4-5"; and (6) "multilevel facet osteoarthritis, most severe at L5-S1." T. 323-24.

When plaintiff returned to the Santa Rosa Community Clinic on March 1, 2016, Nurse Echols reviewed the MRI results and noted plaintiff "has severe [degenerative joint disease] of his back, no encroachment, nothing that needs to see neurosurgery." T. 317. Nurse Echols observed "[t]his is 'wear and tear' arthritis, no surgery indicated." T. 317-18. Nurse Echols prescribed Mobic and Flexeril, and concluded "[h]e should not work as a brick layer, but he could go to Vocational Rehab to learn another trade that is not so physically demanding on his back." T. 317-18.

On March 22, 2016, Mr. English visited Good Samaritan and reported he stopped taking ibuprofen because it did not "work." T. 312. On June 30, 2016, he rated his back pain as an 8 on a scale of 0 to 10, and requested "documentation that he is unable to work." T. 313. Dr. Tucker authored a letter to "Child Support Enforcement" on September 6, 2016. T. 307. It read:

> Charles Kevin English has been unemployed since 2/28/15 due to his inability to perform the duties of the position. Mr. English is a brick mason by trade and has done masonry since he was sixteen years old. Unfortunately, due to the rigorous nature of masonry, he has developed severe back problems. Please see the MRI from 2/10/16 (attached) to confirm said issues. He has been to a physician several times but is unable to obtain relief from chronic pain. The physician said he would no longer be able to perform this type of work as the back problems

will only worsen.  Mr. English has no other work skills and is unable to perform laborious tasks.  As a result, he has been unable to find employment.

T. 307.

## ANALYSIS

Mr. English argues the ALJ's evaluation of his complaints of disabling pain is not supported by substantial evidence.  The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his . . . own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1319 (N.D. Fla. 2008) ("Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.") (*citing* S.S.R. 96-8p).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (*citing Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  "[T]he ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  And of

course, the reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Here, the ALJ concluded plaintiff's physical impairments "could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." T. 23. Substantial evidence supports the ALJ's decision to discount plaintiff's subjective complaints of pain.

First, the ALJ noted "claimant's examinations were essentially normal while presenting at Berryhill Medical and Good Samaritan noted only pain with right flexion." T. 23. Mr. English argues the ALJ erred by relying on the records from Berryhill Medical Clinic. He asserts substantial evidence does not support this reason for discrediting his subjective complaints because the ALJ cited the results of neurological and psychiatric examinations that "are unrelated to Mr. English's back issues." (Doc. 6, p. 18).

Plaintiff's argument misses the mark. In addition to the neurological and psychiatric examinations, the ALJ also correctly observed the musculoskeletal examinations revealed "normal function." T. 22, 290, 293, 296, 299, 302. Furthermore, the neurological examinations—which were "grossly normal"—are

relevant to assessing the severity of a spinal impairment.   The unremarkable examination findings, despite the MRI results from Berryhill Medical Clinic, therefore, support the ALJ's assessment of Mr. English's subjective complaints.  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

Next, the ALJ stated the records from Berryhill Medical Clinic and Good Samaritan Health Clinic "indicate no postural restrictions, no atrophy, and no muscle loss."  T. 23.  Mr. English argues the ALJ drew an impermissible inference from the lack of postural restrictions in these records.  (Doc. 6, p. 18-19).  Specifically, plaintiff says: (1) Dr. Warner from Berryhill Medical "did not offer any such limitations as his pain management care was designed to maximize Mr. English's physical ability"; and (2) the ALJ overlooked that Good Samaritan Health Clinic kept "hand written records" and provided care at a time plaintiff did not work.  (Doc. 6, p. 19).

Although plaintiff offers possible explanations for the absence of postural restrictions in the treatment notes, none undermine the reasonableness of the ALJ's interpretation of the evidence—i.e., the records do not reference such restrictions because the treating providers did not believe plaintiff's condition warranted the

restrictions.  *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.") (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).  The ALJ, therefore, did not err by referencing the lack of postural restrictions in the records from Berryhill Medical Clinic and Good Samaritan Health Clinic.

The ALJ also cited plaintiff's medication regimen as a factor undermining the severity of his allegations.  The ALJ stated "claimant is currently prescribed only prescription strength Ibuprofen for the pain, but he testified that he does not take any pain medications presently."[5]  T. 23.  Claimant says his financial condition limited him to seeking treatment at places such as Good Samaritan, which "will not/cannot" prescribe narcotic pain medication.  (Doc. 6, p. 19-20).  Thus, Mr. English argues "[t]he fact that [he] was forced by economic circumstances to treat with a provider that does not prescribe stronger medication does not constitute substantial evidence." (Doc. 6, p. 20).  In response, the Commissioner asserts: (1) "Plaintiff speculates that the decision of his GSHC attendant to not prescribe narcotics was unrelated to his condition"; (2) "the GSHC records do not indicate that narcotic pain medication was

---

[5] In a disability report dated March 31, 2015, Mr. English denied taking either prescription or non-prescription medication.  T. 216.  At the January 2017 hearing, however, counsel showed plaintiff a list of his medications and the ALJ asked if the list was "correct and up to date."  T. 50.  Claimant stated "[w]ell, the Flexeril and the stuff—there's information—I don't take now.  The Ibuprofen is gone."  T. 50.  He then testified that the second page of the medication list, which included metoprolol tartrate, hydrochlorothiazide, cyclobenzaprine, and meloxicam, was correct.  T. 50.

necessary and/or that he should seek it elsewhere"; and (3) "subsequent records from SRCC show no indication that Plaintiff needed narcotic pain medication." (Doc. 9, p. 11).

The evidence does suggest Good Samaritan Health Clinic could not prescribe narcotics, T. 310, and plaintiff took meloxicam (a nonsteroidal anti-inflammatory drug) at the time of the hearing. T. 38, 50, 255. Thus, the ALJ mildly mischaracterized Mr. English's medication regimen. Nevertheless, the ALJ cited more than a scintilla of evidence in the rest of the decision for discrediting plaintiff's subjective complaints of pain. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("Substantial evidence is more than a scintilla, but less than a preponderance."). Claimant, therefore, has not shown the ALJ's consideration of claimant's medications constitutes reversible error.

Next, plaintiff argues the ALJ should not have relied on Nurse Echols' reference to vocational rehabilitation to discount plaintiff's subjective allegations. Echols stated: "[Claimant] should not work as a brick layer, but he could go to Vocational Rehab to learn another trade that is not so physically demanding on his back." T. 317. Claimant notes Nurse Echols saw him only two times and is not a vocational expert, nor "familiar with what Vocational Rehabilitation could do." (Doc. 6, p. 20-21).

The ALJ did not err by relying on Nurse Echols' statement when assessing the severity of Mr. English's subjective complaints.  Echols examined claimant and reviewed the results of the February 2016 MRI.  T. 317-20.  Her statement indicates she believed plaintiff was capable of working, albeit not as a brick mason.[6]  Nurse Echols' statement, therefore, supports the ALJ's determination that plaintiff's complaints of disabling pain were not entirely credible.[7]

The ALJ also considered Nurse Echols' decision not to refer claimant to neurosurgery when assessing his subjective complaints.  After seeing the results of the MRI, Echols indicated plaintiff had "'wear and tear' arthritis" and "no surgery [was] indicated."  T. 317-18.  Mr. English interprets Nurse Echols' lack of a neurosurgical referral as suggesting that he suffers from a condition that "cannot be ameliorated by surgical intervention."  (Doc. 6, p. 21).  An equally, if not more, plausible reading of Echols' statement is that she did not believe plaintiff's spinal

---

[6] The vocational expert classified brick mason as "heavy work."  T. 62; *see* 20 C.F.R. §§ 404.1567(d), 416.967(d) ("Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.").  Even plaintiff's mother indicated his pain improved when he stopped performing the strenuous activities required of a brick mason.  *See* T. 225 ("[H]e has not had severe pain with back and elbow since he has not been lifting and moving blocks.").

[7] Minal Krishnamurthy, M.D., the reviewing state agency expert, also concluded plaintiff could perform light work.  T. 98-100, 111-13.  The ALJ noted Dr. Krishnamurthy's assessment was consistent with Nurse Echols' opinion that plaintiff is not precluded from all work.  T. 23.  Dr. Krishnamurthy's opinion provides additional support for the ALJ's finding that plaintiff's allegations of disability were not entirely credible.  *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) ("State agency medical . . . consultants are highly qualified and experts in Social Security disability evaluation.").

condition was severe enough to warrant surgery. Because the ALJ's interpretation of the evidence is not unreasonable, the ALJ did not err by referencing the lack of a neurosurgical referral as a reason to discount plaintiff's subjective allegations. *See Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) ("ALJs are permitted to consider the type of treatment a claimant received in assessing the credibility of his subjective complaints.") (citation omitted).

In sum, the ALJ articulated adequate reasons, supported by substantial evidence, for discrediting plaintiff's complaints of disabling pain. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."). The decision of the Commissioner, therefore, should be affirmed.

Accordingly, it is respectfully RECOMMENDED:

1.     That the decision of the Commissioner be AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income be DENIED.

2.     That the clerk be directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 20th day of December, 2018.

*/s/Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.